# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS AUSTIN BEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-00611 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In mid-December 2020, Travis Austin Bey was driving with a friend when he was stopped by Chicago police for allegedly not having a working taillight.[1] R. 25, Am. Compl. ¶ 4; R. 25, Affidavit of Facts, Austin Bey Decl. ¶ 5.[2] When asked by officers to provide a driver's license and car registration, Bey handed the officers a driver's license and car registration issued by the "United States of America Republic." Bey Decl. ¶¶ 9–11. When Bey could not provide a valid state issued driver's license or registration, the officers arrested him. *Id*. ¶ 12. The car that Bey had been driving was taken to the police station. *Id*. ¶ 13. Bey now brings this lawsuit *pro se* alleging various constitutional violations and state law claims against Defendant Officers and the City of Chicago. At this point, the operative pleading is the Amended Complaint. Am. Compl. The Defendants move to dismiss all counts. R. 50, Defs.' Mot. to Dismiss.

---

[1] The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

[2] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

For the reasons discussed below, the motion is granted in full, and all counts are dismissed with prejudice.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), as well as those in Bey's response brief (to the extent they are consistent with the Complaint), *see Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017). *See also Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir. 2002) (on a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs.") (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988) and Fed. R. Civ. P. 10(c)).

Austin Bey and a friend were pulled over by Chicago police while driving in December 2020. Am. Compl. ¶ 4. The officer told Bey that he had been pulled over for not having a taillight. *Id*. Bey says that dash camera footage from the stop "prove[s]" different and shows that the car had working taillights at the time of the stop. *Id*. Bey identifies as a "Moorish American National" and says he is a resident of the "United States of America Republic," not the United States of America. R. 25, Affidavit of Facts, Holmon Bey Decl. ¶ 7. According to the documents included with Bey's Amended Complaint, the United States of America Republic is registered in Indiana as a domestic nonprofit corporation. Am. Compl. at 66.

After stopping Bey in the car he was driving, Officer Mohammed Ahmad asked Bey for his driver's license. Am. Compl. ¶ 4. Bey gave the officer a driver's license

issued by the "United States of America Republic." *Id*. There was a back and forth between the officer and Bey about the validity of the driver's license, with Bey repeatedly telling the officers that he is a resident of the United States of America Republic, not Illinois (where the stop occurred) or even the United States more broadly. *Id*. The same interaction occurred when the officer asked Bey for the car's registration and Bey handed him a car registration that was both in someone else's name and created by the USAR. *Id*. ¶ 5.

According to Bey, he is exempt from the requirement that he have a state issued driver's license because he is nonresident of the United States and he has a license from his home country—the USAR. Am. Compl. ¶ 4. Similarly, as a nonresident, the car that Bey drove supposedly need not have state-registration documents. *Id*. ¶ 5. After being unable to show Officer Ahmad that Bey had a valid driver's license or car registration, the officer asked Bey to step out of the car. *Id*. ¶ 6. The officers then handcuffed and arrested Bey. *Id*. ¶¶ 6–7. Ahmad took the car that Bey had been driving to the police station. *Id*. ¶ 7. The documents attached to Bey's complaint show that the car, which was not registered to Bey, was impounded. Am. Compl. at 83, Pl.'s Exh. M, Impound Slip at 1. The officers took and inventoried Bey's USAR driver's license, insurance card, car registration, and temporary license plate. *See* Am. Compl. at 87, Pl.'s Exh. O, Property Inventory Slip. Bey asserts that his purported license, insurance, car registration, and temporary license plate were all valid government documents issued by the United States of America Republic. Austin Bey Decl. ¶¶ 10–11; R. 59, Pl.'s Reply at 2–4. To Bey's way of thinking, then, the officers did not have

3

probable cause to arrest him or take his property. Am. Compl. ¶ 31. Based on the stop, arrest, and confiscation of his property, Bey brings 10 claims against the City of Chicago and Officers Ahmad Mohammed and Suzanne Niemoth. *Id.* ¶¶ 8–36.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. When evaluating sufficiency of a *pro se* complaint, the Court applies a less stringent standard than formal pleadings drafted by lawyers. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

### III. Analysis

Before addressing the Defendants' arguments, it is helpful to pause and clarify the claims at issue. The Amended Complaint lists 10 separate counts, but many of the counts are plainly not actionable on their own as written. To read the complaint expansively, given Bey's *pro se* status, it is helpful to reclassify Bey's claims where the facts support it.

Under the title, "1st Cause of Action," Bey includes facts about his stop, arrest, and the seizure of the car that he was driving. Am. Compl. ¶¶ 4–8. The Complaint mentions false arrest, *id.* ¶¶ 13, 25, 44, and separately implies that the officers conducted an unreasonable search, *id.* ¶ 7; Holmon Bey Decl. ¶ 9. These facts make it clear that, at least in part, Bey's claims are rooted in the Fourth Amendment—despite the fact that he does not specifically name that constitutional provision. Under Count One, Bey invokes 42 U.S.C. § 1983 and alleges that the Defendants conspired to deny Bey's rights under the constitution and laws of the United States of America Republic. Am. Compl. ¶¶ 8–9. He also says that the officers conspired to violate his right to equal protection. Count Two elaborates on the conspiracy claim and adds 42 U.S.C. § 1985 as a vehicle for the conspiracy claim. So construing these counts

5

liberally, Bey alleges violations of the Fourth Amendment and a corresponding conspiracy among the Defendants to commit constitutional violations.

The language of Counts Three and Four blends together, but the substance suggests that they are intended to be separate claims. For Count Three, Bey again cites 42 U.S.C. § 1983 and claims that the Defendants "refus[ed] or neglect[ed] to prevent." Am. Compl. ¶¶ 17–18. The Court construes this count to be a claim for failure to intervene. The count also repeats allegations of Fourth Amendment violations and conspiracy, which will be folded into the analysis of those claims as needed. Separately, Count Four is a claim for abuse of process.

Count Five in essence says that the Defendants acted under color of law to violate Bey's civil rights under 18 U.S.C. §§ 241 and 242. Am. Compl. ¶¶ 22–24. This count can be dismissed outright without further discussion because 18 U.S.C. § 241 is a federal *criminal* statute and confers no private right of action—nor does § 242. *See Pawelek v. Paramount Studios Corp.*, 571 F.Supp. 1082, 1083 (N.D. Ill. 1983); *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), *aff'd*, 963 F.2d 1522 (2d Cir. 1992) (section "242 do[es] not provide for a private right of action").

Count Six is clear and need not be reframed, as is the case for Counts Eight and Ten. Count Seven, although confusingly labeled as a violation of the "Commerce Clause," is in reality also part of Bey's claims for violations of the Fourth Amendment—the substance of that count points to Bey's allegedly unlawful detention and the confiscation of his various United States of America Republic documents. Am Compl. ¶ 27.

In Count Nine, Bey alleges that the Defendants violated the right to due process of law. The subheading for Count Nine in the complaint suggests that Bey asserts this right as it supposedly pertains to the United States of America Republic. The content of Count Nine as alleged in the Complaint, however, says that the Defendants violated the *Plaintiff's* right to due process of law. Am. Compl. ¶¶ 31–33. For the sake of completeness, the Court addresses both constructions of Count Nine.

To recap, the claims to be analyzed are as follows: false arrest, unlawful seizure, equal protection, due process, civil conspiracy, failure to intervene, abuse of process, malicious prosecution, intentional infliction of emotional distress, free exercise of religion, and civil RICO. Despite the expansive number of claims and liberal construction of the complaint, none of Bey's claims survive the motion to dismiss. Now that the claims have been laid out, the analysis follows.

## A. Section 1983

To start, Bey brings various constitutional-rights claims against the officers under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a § 1983 claim, plaintiffs must adequately allege that they were "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Section 1983 is the appropriate vehicle for Bey's allegations, in substance, that the officers violated the Fourth Amendment, as well as the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. Bey also alleges that the

officers violated his constitutional rights when they failed to intervene to prevent those constitutional violations. The Court will discuss each claim in turn.

### 1. Fourth Amendment

The Defendants argue that all of Bey's claims relating to false arrest or the unlawful seizure of property should be dismissed because Bey has pleaded himself out of court. Defs.' Mot. to Dismiss at 3–5. The Court agrees. Although *pro se* pleadings are read expansively, a *pro se* complainant may still "plead himself out of court by pleading facts that undermine the allegations set forth in his complaint." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). That is what has happened here.

Bey asserts generally that his rights were violated during the initial traffic stop, his arrest, and through the seizure of the car he was driving. The Fourth Amendment is the proper avenue for challenging the constitutionality of an arrest and unreasonable search. *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012). Throughout Bey's complaint he repeats that the Defendants acted without probable cause. Am. Compl. ¶¶ 19, 31, Austin Bey Decl. ¶ 5. For their part, the officers respond that not only was there probable cause—but Bey himself lays out and attaches the probable cause to the Amended Complaint. Defs.' Mot. to Dismiss at 3.

First up is probable cause for the traffic stop. Like an arrest, a traffic stop also constitutes a seizure under the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Brendlin v. California*, 551 U.S. 249, 255 (2007) (cleaned up). When Bey was pulled over, Officer Ahmad told Bey that he had been stopped for "having no tail light." Am. Compl. ¶ 4. Bey says that

Ahmad's dash cam footage "will prove different" and that the car had working tail-lights. *Id.*; Austin Bey Decl. ¶ 8. In other words, according to Bey, the officers lacked probable cause to conduct a traffic stop because his taillights were in fact working properly when they pulled him over. Austin Bey Decl. ¶¶ 5, 8. Bey directly references the dash-cam footage in his complaint—and the officers took Bey up on his invitation and included that footage as an exhibit. *See* R. 52, Defs.' Digital Exhibit, Body Worn Camera. The dash-cam footage directly contradicts Bey's assertion. The body-worn camera footage shows that as the officers approach the car, a single left taillight was on—but the taillight on the right side of the car had flickered off. Body Worn Camera at 02:04–02:07. At another point in the footage, the left taillight stops working. *Id.* at 3:34–3:37. As can also be seen in the video, the glass around the left taillight is shattered and the lightbulb is exposed. *Id.* at 2:05. Where "an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (cleaned up). Yes, in this day and age of deep-fake videos, it is possible to explain away video footage, but Bey has not tried to do so here. So, for the purposes of this motion, at least one of Bey's taillights was not working. And in Illinois, cars must have *two* working taillights. 625 ILCS 5/12-201. Where an officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports a traffic stop. *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). That has been established here.

Moving on from the initial traffic stop, the defense argues that the fact that Bey's driver's license, car registration, and license plate were all issued by the "United States of America Republic" provided probable cause for the arrest. Defs.' Mot. to Dismiss at 3–5. According to Bey, he is a National of the United States of America Republic. Austin Bey Decl. ¶¶ 9–10. He continues that because he is a nonresident with a valid license issued from his home country, under 625 ILCS 5/6-102, he need not have an Illinois driver's license. Am. Compl. ¶ 4. He applies the same argument to the car registration. *Id*. ¶ 5. But the car registration has an extra wrinkle—it does not show that the car is registered to Bey. *Id*. In any event, all of Bey's arguments based on his status as a resident of the United States of America Republic fail. As the defense correctly point out, the Seventh Circuit is clear that this strand of argument, one based on sovereign citizenship, has "no conceivable validity in American law." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990); *see also United States v. Jonassen*, 759 F.3d 653, 657 and n.2 (7th Cir. 2014); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting the "shop worn" argument that a defendant is a sovereign and is beyond the jurisdiction bounds of the district court); *United States v. Sloan*, 939 F.2d 499, 500–01 (7th Cir. 1991). The laws of the United States and of Illinois apply to Bey. Bey was driving a car without a valid driver's license and without proper registration. The officers had plentiful probable cause to arrest him. And the existence of probable cause is an absolute bar to an illegal-seizure claim under the Fourth Amendment, so Bey's claims stemming from an unlawful seizure must be dismissed. *See Friedman v. Vill. of Skokie*, 763 F.2d 236, 239 (7th Cir. 1985).

Because Bey cannot amend his complaint to do away with the probable cause, and because he has already amended the complaint once (without hinting how he would fix these claims) these Fourth Amendment claims are dismissed with prejudice.

Bey also alleges, in substance, that the officers separately violated the Fourth Amendment when they drove the car (with its attached United States of America Republic license plate) to the police station. Am. Compl. ¶ 7. The body of the Complaint does not mention whether the car was impounded. The exhibits attached to the Complaint, however, include Chicago Police Department documents that show the car's impoundment. Impound Slip at 1. Construing the Complaint liberally, Bey alleges that the officers illegally seized the car when they drove it away from the scene and had it impounded. Am. Compl. ¶ 7.

Bey has pleaded himself out of court on this claim and it must be dismissed. The car does not belong to Bey, as his own proffered (but bogus) car registration shows. The Supreme Court has explained that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property" caused by a government actor. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Because Bey has not asserted any possessory interest in the car, this claim must be dismissed.[4]

---

[4]Indeed, even if Bey had alleged the car belonged to him, the claim still would fail because the Complaint and accompanying documents show that the officers had probable cause to impound the car.

## 2. Equal Protection and Due Process

The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from discriminating on the basis of certain protected classifications and also bars governments from treating a person irrationally as a so-called "class of one." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). For an equal-protection claim based on class membership to survive a motion to dismiss, plaintiffs must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent. *See Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). The other form of equal-protection claim is different: a class-of-one claim requires the plaintiff to allege that (1) a state actor intentionally treated them "differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget*, 595 F.3d at 695.

Here, although not explicit, Bey hints at equal protection violations in Counts One and Two. He alleges that "Defendant(s) conspired for the purpose of impeding and hindering the due course of justice, with the intent to deny Plaintiff equal protection of laws," Am. Compl. ¶ 10 (citation omitted), and that "[t]wo or more Defendant(s) did disguise themselves, conspire to detain, and unlawfully deprive the Plaintiff of equal protection of the law," *id*. ¶ 14.

In addition to bringing his claims under § 1983, Bey also invokes 42 U.S.C. § 1985(3). Section 1985(3) provides a civil cause of action for conspiracy to deprive someone of that person's right to equal protection of the laws. To state a claim under

12

§ 1985(3), the plaintiff must allege a conspiracy with the purpose of depriving a class of persons of the equal protection of the laws. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Presumably because the allegations are so sparse, the Defendants do not specifically address the sufficiency of an equal protection violation. *See generally* Defs.' Mot. to Dismiss. This is understandable given the paucity of the hints at an equal protection violation. Bey does not plead that he is a member of a protected class, nor does he plead any facts to support a class-of-one claim.

The *facts* in the Amended Complaint similarly do not plausibly state a claim under a § 1985 theory of civil conspiracy. Section 1985(3) requires the "purpose" of the conspiracy to be the deprivation of equal rights. *See* 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire ... *for the purpose* of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ....") (emphasis added). In other words, the conspiracy must be motivated by discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."). To reiterate, Bey makes no factual allegations suggesting discriminatory intent or that the officers had a purpose to deprive Bey of his rights.

Turning to Bey's due process allegations, the Amended Complaint switches between alleging that "Plaintiffs" due process rights were violated and that the United

States of America Republic's rights were violated. Am. Compl. ¶¶ 10, 31–34. For Bey to state a procedural due process claim on his own behalf, he must allege (1) the deprivation of a protected interest, and (2) insufficient procedural protections in effectuating that deprivation. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). To state a substantive due process claim, he must allege the deprivation of a fundamental interest "so deeply rooted and sacrosanct that no amount of process would justify its deprivation." *Christensen v. County of Boone, IL*, 483 F.3d 454, 462 (7th Cir. 2007). In other words, a plaintiff must allege an "abuse of governmental power so arbitrary and oppressive that it shocks the conscience." *Catinella v. County of Cook, Illinois*, 881 F.3d 514, 519 (7th Cir. 2018).

Here, Bey has failed to state a claim under either due process theory. There are simply no facts to support these claims. And to the extent that he attempts to assert a claim on behalf of the United States of America Republic, the Defendants are correct—he cannot do so. Defs.' Mot. to Dismiss at 4. Based on the records Bey attaches to his complaint, the USAR is a corporation and because Bey is not an attorney, he may not represent the USAR's rights in court. *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008).

The Fourth Amendment, equal protection, § 1985(3), and due process claims are all dismissed, and dismissal with prejudice is appropriate. As noted earlier, Bey has already amended the complaint once, and he offers no suggestion in his response brief on how he might fix the claims.

### 3. Failure to Intervene

Next, this Court construes Bey's claim that the Defendants "neglected to prevent an injury to plaintiff" as a claim for failure to intervene. Am. Compl. ¶ 17(c). "The Seventh Circuit has consistently recognized that a state actor's failure to intervene in the violation of another's constitutional rights may render him liable" under § 1983. *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1053 (N.D. Ill. 2016) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), and *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)). Based on the language used in Count Three, it seems that Bey grounds this allegation in the officers' failure to prevent the violation of his Fourth Amendment rights. In response, the Defendants reiterate that the claim fails because probable cause defeats the supposed underlying constitutional violation. Defs.' Mot. to Dismiss at 6. The Defendants are correct. "In order for there to be a failure to intervene ... there must exist an underlying constitutional violation." *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (cleaned up). Because Bey does not successfully plead any constitutional violations, the failure to intervene claim must also be dismissed. Again, the dismissal is with prejudice because Bey offers no way to fix the claim.

### 4. Conspiracy

The Court has already addressed Bey's civil-conspiracy claim under § 1985 and explained why it must be dismissed. For the sake of completeness, the Court now turns to the conspiracy allegations in Count Two, brought under § 1983. In essence, Bey alleges that the officers conspired to violate his Fourth Amendment rights. Am.

Compl. ¶¶ 13–14. There are no facts related to this alleged conspiracy beyond the statement that the officers disguised themselves. *Id.* ¶ 14. Crucially, a claim for conspiracy under § 1983 requires "an actual denial of a civil right ... before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). Here, the conspiracy claim is premised on the Fourth Amendment claims discussed earlier. Because the Fourth Amendment claims fail, so too does the derivative conspiracy claim against the Defendants.

### 5. *Monell*

In Count Five, Bey recites a portion of *Monell v. New York Dep't of Social Services*, and later in the Amended Complaint, he alleges that the Defendants were the "moving force" behind his constitutional deprivations. Am. Compl. ¶¶ 23, 38; 436 U.S. 658 (1978). On the one hand, *Monell* claims are not subject to any heightened pleading standard, and need only plead sufficient facts to put the municipality on notice of the gravamen of the claims. *Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001). On the other hand, a plaintiff must "provide some specific facts" to support his *Monell* claim and cannot simply rely on legal conclusions and conclusory allegations. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (cleaned up); *see also Elsayed v. Vill. of Schaumburg*, 2015 WL 1433071, at *5 (N.D. Ill. Mar 26, 2015) (concluding simply reciting elements in a *Monell* claim in a complaint was inadequate without sufficient associated facts).

To survive the City's dismissal motion, Bey must adequately plead that he suffered a deprivation of his substantive constitutional rights, and that the deprivation

was caused by a municipal policy or custom. *See Latuszkin*, 250 F.3d at 503–05. The official policy or custom can take the form of: (1) an official municipal policy; (2) "a governmental practice or custom that, although not officially authorized, is widespread and well settled"; or (3) a decision by a municipal agent with final policymaking authority. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). But as the Defendants point out, Bey does not identify any City policymaker, policy, custom, or practice at all—and that is fatal to the pleading. Defs.' Mot to Dismiss at 10. The Amended Complaint fails to adequately plead *Monell* liability. Again, the dismissal is with prejudice given the earlier amendment and the lack of a suggestion on the claim would be re-alleged.

### 6. Religious Freedom Restoration Act

Bey partially attempts to plead a claim based on the Religious Freedom Restoration Act (often referred to as RFRA), which prohibits the burdening of religious practices without a compelling reason:

> (a) Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
>
> (b) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1. This claim can be swiftly dismissed. The Amended Complaint contains no facts related to Bey's religious expression. There are no allegations

suggesting that the government burdened Bey's religious expression. Without any such facts, this Court need not address the substance of what such a claim requires. Count Eight is dismissed, again with prejudice given the earlier amendment and the absence of any suggestion by Bey on how he would successfully allege a RFRA claim.

### 7. RICO

Finally, Bey alleges that the Defendants have violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C. § 1962(c). To state a viable RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001).

Here, the Amended Complaint falls well short of adequately alleging a civil RICO claim. Bey again mentions "racketeering, conspiracy to enter false documents into the court, unlawfully arresting, detaining, imprisoning, seizing, towing or confiscating private U.S.A.R. State owned Property." Am. Compl. ¶ 35. There are no facts related to any of the required elements of a RICO claim. For example, under RICO, a pattern must comprise, at a minimum, two predicate acts of racketeering. *Slaney*, 244 F.3d at 598–99. There are no factual accusations on any predicate act, so the Amended Complaint does not adequately allege a RICO claim. Nor is there any set of

18

allegations on an enterprise of any kind. This claim too is dismissed, and again a with-prejudice dismissal is appropriate given the earlier amendment and the lack of any reason to think that the claim can be fixed.

## B. State Law Claims

### 1. Abuse of Process & Malicious Prosecution

Moving on to Bey's state law claims, in Count Four Bey alleges abuse of process.[5] According to the Defendants, Bey's argument on this point is wholly conclusory and does not include sufficient facts to survive a motion to dismiss. Defs.' Mot. to Dismiss at 7. This Court agrees. The tort of abuse of process requires "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). As pleaded, Count Four does not contain a single fact specific to Bey, the Defendants, or Bey's encounter with police. This level of legal abstraction is fatal to the claim.

---

[5] With the federal claims dismissed, the only remaining counts are state law claims. Typically, the usual presumption would kick in: "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). This presumption is reflected in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction have been dismissed. In this case, neither side has requested that this Court relinquish jurisdiction. Even though federal-question jurisdiction no longer applies, there may be diversity jurisdiction—which would supply an independent basis to retain jurisdiction. Bey alleges an amount in controversy exceeding $75,000 and at the time of Bey's arrest he gave the officers a "Province of Missouri" driver's license, suggesting he may have been a Missouri citizen. Holmon Bey Decl., ¶ 5. In any event, given the absence of a request for relinquishment and, more importantly, the clarity of the defects in the state law claims, the Court will exercise its discretion to address the state claims.

### 2. Emotional Distress

The next claim up for consideration is intentional infliction of emotional distress. In Illinois, the tort of intentional infliction of emotional distress has three elements: (1) the defendant's conduct must be truly extreme and outrageous; (2) the defendant must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the defendant's conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Whether the conduct is extreme and outrageous is measured by an objective standard based on all of the particular facts and circumstances. *Id.* at 811.

For this claim, Bey asserts, without any accompanying factual allegations, that the officers engaged in a pattern of misconduct, that "the Plaintiff was vulnerable, and the Defendant(s) knew it," and that the Defendants were in a position of power. Am. Compl. ¶ 25. He goes on to state generally that the Defendants "intentionally and maliciously defamed, harassed and emotionally tortured Defendant(s)" (presumably intending to say Plaintiff). *Id.* (citation omitted). In the pertinent portion of the Complaint, Bey also cites the general proposition that providing false information can support a claim for false imprisonment—implying in part that the extreme and outrageous conduct stems from the false arrest. *Id.* The Defendants argue that this claim must be dismissed because the multiple showings of probable cause demonstrate that the officers' behavior was not extreme or outrageous. Defs.' Mot. to Dismiss at 8. And further, as this Court also highlights, there are no facts in the Amended Complaint

to show that this was a repeated series of events, that Bey is particularly vulnerable, that the officers had any intent to inflict emotional distress, or that Bey's distress was severe. *Id.*

To qualify as extreme and outrageous, conduct "must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. United States Steel*, 869 F.3d 557, 559 (7th Cir. 2017) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (2003)). Mere "insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not amount to extreme and outrageous conduct." *Id.* (cleaned up). The Amended Complaint is devoid of facts to support any aspect of an emotional-distress claim. Bey has failed to adequately allege intentional infliction of emotional distress, so this claim is also dismissed.

As noted earlier, Bey has already amended the complaint once, and he offers no possible ways to fix the state law claims. Thus, the claims are dismissed with prejudice.

## IV. Conclusion

The Defendants' motion to dismiss is granted in full. All of the claims are dismissed with prejudice. Final judgment shall be entered. The tracking status hearing of April 8, 2022, is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2022

21